IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| The United States of America, et al., | ) |
| | ) |
| Plaintiffs, | ) Case No. 10 C 50067 |
| | ) |
| vs. | ) |
| | ) |
| Alacran Contracting, LLC, et al., | ) |
| | ) Judge Philip G. Reinhard |
| Defendants. | ) |

## ORDER

For the reasons stated below, Alacran's motion [148] to set aside the entry of default and reinstate its counterclaims is denied.

## STATEMENT-OPINION

Defendant, Alacran Contracting, LLC moves [148] to set aside the court's April 7, 2015 order [123] entering default[1] against it and striking its counterclaims [100] for want of prosecution. Default was recommended in a report and recommendation [121] entered March 20, 2015 by Magistrate Judge Johnston. Magistrate Judge Johnston recommended the entry of default against Alacran "[i]n light of the history of failing to comply with court rules and orders, as well as [Alacran's] failure to obtain counsel and appear at the February 26 and March 17, 2015, status hearings." Alacran did not object to the report and recommendation. The court accepted the report and recommendation and found Alacran "in default pursuant to Fed. R. Civ. P. 55(a) for failure to otherwise defend, Fed. R. Civ. P. 37(c) for failure to comply with plaintiff's discovery requests, as well as pursuant to the court's inherent authority to sanction litigants who abuse the judicial process." Alacran's counterclaims were "stricken pursuant to Fed. R. Civ. P. 41(b) for want of prosecution."

Alacran argues Fed. R. Civ. P. 55(c) entitles it to have the entry of default set aside. Rule 55(c) provides the "court may set aside an entry of default for good cause." "A party seeking to vacate an entry of default prior to the entry of final judgment must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Cracco v.

---

[1] Another action, 11 C 50126, is also pending against Alacran in this court. An entry of default against Alacran was also made in that case and a similar motion to set aside the default is pending in that case as well.

Vitran Express, Inc., 559 F.3d 625, 630 (7th Cir. 2009) (internal quotation marks and citations omitted.).

Alacran's proffered "good cause" is its inability to afford to pay an attorney to represent it. Alacran relies on Allen Russell Publ'g, Inc. v. Levy, 109 F.R.D. 315 (N.D. Ill. 1985) to support this argument. In Allen, default was entered against one of the defendants, VII World Wheelchair Games ("Games"), for failure to answer or otherwise plead. Games moved to set aside the entry of default. After being served with process Games failed to answer or otherwise plead. Games contended it was "unable to procure an attorney due to its lack of finances and/or conflicts of interest on the part of attorneys who were otherwise willing to represent" it. Id., at 317 (internal quotation marks omitted.) Wiley, the chairman of the board of Games, filed an affidavit. The affidavit stated that "during this period Games had funds of no greater than 'a few hundred dollars' and had 'no expectation of getting any more funds.'" Id. After Games had been served with process, according to Wiley's affidavit, the board discussed obtaining legal representation and concluded "none of them 'knew any attorneys that were not either involved in the case or unable to represent [Games] on a pro bono or very limited fee basis.'" Id. "Three firms were specifically contacted by Games on the question of representation. Two had conflicts of interest with Games and could therefore not represent it. One firm could not represent Games at other than a cost that was prohibitive for Games." Id. The court in Allen concluded "that Games' lack of counsel due to financial difficulties constitutes good cause." Id., at 318. The court noted "Games' lack of counsel was not due to its lack of exercising reasonable diligence in attempting to procure representation. Despite its financial difficulties, Games made those attempts which could reasonably be expected of it under the circumstances to procure counsel prior to default." Id.

Alacran's situation differs substantially from that of Games in the Allen case. Alacran was represented in this case by counsel from May 20, 2010 until February 24, 2015. This is not a case of a defendant being served with a complaint and never appearing in the case because it could not find a lawyer willing and able to represent it at a price it believed it could afford. Alacran had an attorney representing it. The attorney had been representing it for nearly five years in this litigation. Alacran's president, Bui, filed an affidavit (dated July 31, 2015) in support of its motion to set aside the default. In that affidavit, Bui states that Alacran began to experience severe financial difficulties starting in 2014 through 2015. In February 2015, a $2.1 million judgment was entered against Alacran in a different case. At that time, Alacran was unable to pay its legal bills. It owed its counsel for services in the present case more than $34,000 and nearly $80,000 for counsel's services overall. In February 2015, Bui states that counsel informed him that counsel was going to withdraw from representing Alacran in this case. The court record shows Alacran's counsel filed a motion to withdraw [109] on February 11, 2015 and that counsel served the motion on Alacran by certified mail. A notice [115] of the motion to withdraw was filed on February 13, 2015 and served on Alacran by certified mail notifying Alacran that the motion to withdraw would be presented before Magistrate Judge Johnston on February 17, 2015 at 10:00 a.m. The notice advised Alacran that "you may appear, if you so desire."

Despite being notified of the hearing on the motion to withdraw and being advised "you may appear, if you so desire," neither Bui or anyone else from Alacran attended the hearing. Bui states that sometime after counsel's motion to withdraw was granted he received a copy of the court order and learned Alacran had been given until March 17, 2015 to retain new counsel. After receiving a copy of the order, Bui called two attorneys to ask them to represent Alacran in this lawsuit and in 11 C 50126 (see footnote 1 above). Both attorneys told him "they would require Alacran to pay a very large retainer up front" because "Alacran already had a judgment against it in an unrelated matter" and because the cases were pending in federal court and would likely take several years to conclude. At that time, according to Bui's affidavit, Alacran had approximately $25,000 in liquid assets and owed more than $4.9 million in liabilities. Bui states Alacran could not afford to pay either of the retainers required by those attorneys. What Alacran did do, was hire one of those attorneys as bankruptcy counsel. That attorney, according to Bui's affidavit, "prepared all of the necessary paperwork for a Chapter 11 filing." Bui's affidavit does not give specific figures for the retainers required by the attorneys he contacted about representing Alacran here nor for the amount Alacran paid to the attorney it retained for the Chapter 11 filing. As yet, Alacran has not filed a bankruptcy petition. Bui states "Alacran's financial position has deteriorated since the time of the default."

Bui's affidavit also states that on the advice of its then counsel, in the later part of 2014, Alacran hired a third party IT consultant to gather electronic discovery from Alacran to produce to plaintiffs. The consultant "ran searches of Alacran's entire email server based on search terms" provided by Alacran's then counsel. The consultant gave Bui the search results which were placed on an external hard drive and given to Alacran's then counsel. The size of the search results was 34 GB. After Alacran turned over this hard drive to plaintiffs, the parties hired an independent forensic examiner (Protek) and entered a Computer and Electronic Database Protocol authorizing Protek to search Alacran's systems. The purpose of hiring the independent examiner was to determine whether spoliation or destruction of evidence by Alacran had occurred. This examination did not occur prior to Alacran's counsel's motion to withdraw and has not occurred since. Magistrate Judge Johnston's report and recommendation noted this forensic examination had "itself been delayed by Alacran's failure to defend."

In looking at the above stated facts, it is apparent Alacran's default resulted from its decision to ignore the ongoing court proceedings, beginning with the hearing on its counsel's motion to withdraw. Had Bui (or some other representative of Alacran) appeared, a dialogue with the court as to Alacran's situation could have occurred and a different order may have been entered. The court could have denied the motion to withdraw. (Rule 1.16(c) of the Illinois Code of Professional Responsibility provides: A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.) Bui's failing to appear, deprived the court of any input from Alacran and, thus, any opportunity to utilize such input in crafting its order. Between the date of the order granting counsel's motion to withdraw, and the March 17, 2015 deadline for obtaining new counsel, Alacran never communicated with the court to advise it of Alacran's difficulties in

finding new counsel. No representative of Alacran appeared at the March 17, 2015 status hearing to advise the court of Alacran's efforts to find counsel and its lack of success in doing so. Had a representative of Alacran showed up at the status hearing and asked for more time to retain counsel, the court could have considered that request. By ignoring the court proceedings, Alacran deprived the court of any opportunity to accommodate Alacran's needs. The facts set out in Bui's affidavit could have and should have been brought to the court's attention well before the April 7, 2015 order of the court accepting the report and recommendation and entering the default. Alacran has not shown good cause for its "failure to otherwise defend."

Alacran also argues that the entry of default as a sanction under Fed. R. Civ. P. 37(c) for failure to comply with discovery requests was "too severe and was made too hastily given the specific factual circumstances." However, the court's determination that Alacran has not shown good cause for its default under Rule 55(a) for failure to otherwise defend, renders Alacran's arguments concerning the entry of default on the additional ground of Rule 37(c) moot. Even if the court were to agree with Alacran on this point, the entry of default under Rule 55(a) would still stand.

The parties argue about whether the Rule 55(c) "good cause" standard or a manifest error of law or fact standard applies to the sanction of default entered under Rule 37(c). However, even applying the Rule 55(c) standard Alacran argues for, the default will not be set aside. Alacran has not shown good cause for its failure to comply with discovery requests. Alacran argues that it has already been sanctioned for its discovery violations so the additional sanction of an entry of default is "too severe."

However, Alacran engaged in a new round of delay by stalling the independent examiner's review. Alacran's decision not to attend the hearing on its attorney's motion to withdraw and its further inaction as noted above further stymied the discovery process. The purpose of the independent examiner was to determine whether Alacran had produced all of its electronically stored information and whether there was evidence any of this information had been destroyed. The decision to ignore the court proceedings precluded this examination from occurring. Impeding the determination whether discovery obligations have been complied with is tantamount to not complying with those obligations. Alacran's pattern of failing to timely act has prejudiced the other parties to the action by requiring additional time and expenditure of resources to seek compliance with rules and orders that should have been followed without compulsion. The entry of default as a Rule 37(c) sanction was justified as discussed above, Alacran has not shown good cause for its decision to ignore the court proceedings.[2]

---

[2] Recently JMB Manufacturing, Inc. v. Child Craft, LLC, Nos. 14-3306, 14-3315, 2015 WL 5000728, * 11 (7th Cir. Aug. 24, 2015), citing, Sims v. EGA Products, Inc., 475 F.3d 865, 868 (7th Cir. 2007) discussed a different approach to "good cause" than that expressed in Cracco quoted above. These cases say that the "good cause" that must be shown does not necessarily require a good excuse for the defendant's lapse but rather good cause for the judicial action. Alacran did not argue it was entitled to relief under this alternative approach to "good cause". In

4

Alacran also asks the court to reinstate it counterclaims that were stricken for want of prosecution pursuant to Rule 41(b). Its reasons for seeking reinstatement are the same as those offered to set aside the entry of default. As discussed above, the reasons advanced by Alacran are not sufficient to warrant the relief it seeks.

For the foregoing reasons, Alacran's motion [148] to set aside the entry of default and reinstate its counterclaims is denied.

Date: 10/05/2015                                ENTER:

*Philip G. Reinhard*
_____
United States District Court Judge

Electronic Notices. (LC)

---

Sims, a magistrate judge recommended denying a motion to set aside a default and recommended that a $31 million default judgment be entered. The district court chose not to accept this recommendation and vacated the entry of default and the Court of Appeals affirmed this decision by the district court as not an abuse of discretion. In JMB, the entry of default led to a multimillion dollar default judgment on a claim that was barred as a matter of law by the economic loss doctrine. JMB concluded a "multimillion dollar judgment on a specious legal theory is too heavy a sanction for a corporation's two-week gap in representation." Id., at * 12. Here, no judgment, default or otherwise, has been entered. A co-defendant remains in the action. Plaintiff's claims are straight forward contract, quasi-contract and Miller Act claims. There is no danger of a judgment on a specious legal theory. The claims against the remaining defendant still must be resolved. Then, plaintiff will still have to prove its damages against Alacran before a default judgment can entered against Alacran. Alacran will be able to contest damages at that time. Based on these facts, the court does not find "good cause" for judicial action granting relief from the entry of default.