IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| The United States of America, ) | |
| for the use and benefit of ) | |
| Sunlee Development, L.L.C., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Case No. 10 CV 50067 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Alacran Contracting, LLC, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## REPORT AND RECOMMENDATION

It is this Court's Report and Recommendation that Plaintiff's complaint be dismissed as untimely. It is further this Court's recommendation that Liberty Mutual Insurance Company's Motion *in Limine* [263] be denied. Any objection to this Report and Recommendation must be filed by March 27, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## STATEMENT

### I. Background

Plaintiff, Sunlee Development, LLC ("Sunlee"), brings this action against Defendants, Alacran Contracting, L.L.C. ("Alacran") (Counts I-VI) and Liberty Mutual Insurance Co. ("Liberty") (Count I only). Liberty is the surety under a payment bond ("Bond") which Alacran was required to provide under the Miller Act as the prime contractor on a project to renovate the Bachelor Officers' Quarters at Fort McCoy, Wisconsin ("the Project"). Sunlee was a subcontractor on the Project.

The Miller Act provides that on any contract of more than $100,000 for "the construction, alteration, or repair of any public building or public work of the Federal Government" the contractor must supply "[a] payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person." 40 U.S.C. § 3131(b)(2). A payment bond, in the penal sum of $1,313,429.60 was supplied for the Project with Alacran as principal and Liberty as surety, binding both principal and surety jointly and severally. In Count I of its Third

Amended Complaint, Sunlee seeks to recover from Liberty under the payment bond for sums Sunlee claims are due from Alacran for labor and materials supplied on the Project. *See* Sunlee's Third Amended Complaint, Dkt. 97.

On April 7, 2015, Judge Reinhard entered an order of default against Alacran. Apr. 7, 2015 Court Order, Dkt. 123. On July 18, 2016, Judge Reinhard ruled on the remaining parties' cross-motions for summary judgment. *See* July 18, 2016 Court Order, Dkt. 211. Judge Reinhard denied Sunlee's motion and granted Liberty's motion only as to Sunlee's claim for the provision of plumbing supplies. *Id.* Despite evidence suggesting that Sunlee's claim was untimely filed, Judge Reinhard ultimately found Sunlee's evidence sufficient to create a genuine issue of material fact as to the date labor or materials were last supplied. *Id.* Judge Reinhard encouraged the parties to reevaluate the possibility of settlement or proceed with an evidentiary hearing to determine whether the action was timely filed. *Id.* The parties were unable to resolve this case with a settlement. Accordingly, Judge Reinhard referred this case to the undersigned for an evidentiary hearing on the issue of timeliness. Feb. 3, 2017 Minute Entry, Dkt. 226.

On October 11, 2017, the Court held the evidentiary hearing. Sunlee and Liberty submitted trial briefs before the hearing and several exhibits were admitted during the hearing. Sunlee's Trial Brief, Dkt. 231; Sunlee's Exhibits, Dkt. 233; Liberty's Trial Brief, Dkt. 237; Liberty's Exhibits, Dkt. 266. Sunlee stood on the evidence it presented during summary judgment, namely the affidavit of Ryan Cole (Sunlee's general manager) with attachments that included subcontractor invoices, and the deposition testimony of Fort McCoy employee Mary Purpus with attached contract progress reports and contract inspection forms for the Project.[1] Sunlee's Exhibit List, Dkt. 233. Liberty called Ryan Cole, Dai Bui (Alacran's owner), and James Kocourek (Sunlee's former construction administrator) during the hearing.

## II. Discussion

On March 17, 2010, Sunlee filed its original complaint for damages under the Miller Act, 40 U.S.C. §§ 3131-34. The Miller Act requires that "[a]n action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). "The [Act] is remedial and to be liberally construed, but the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." *United States ex rel. Material Serv. Div. of Gen. Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004, 1005 (7th Cir. 1973). Accordingly, to be timely filed on March 17, 2010, the last

---

[1] Plaintiff relies on the same evidence it presented to Judge Reinhard during summary judgment, despite his finding that there was a genuine issue of material fact and pointing out that Plaintiff's evidence "is not sufficiently compelling" and "is thin." July 18, 2016 Court Order at 4, 7, Dkt. 211.

labor performed or material supplied by Sunlee must have occurred by March 17, 2009.

As Judge Reinhard previously determined, Sunlee has the burden to prove that its action was timely filed. *See* July 18, 2016 Court Order at 3, Dkt. 211; *see also* Nov. 22, 2016 Court Order at 2, Dkt. 221 (upholding that finding after a motion to reconsider). Moreover, to collect under the Miller Act, Sunlee must prove the following elements: (1) that labor and materials were supplied for work in the particular contract at issue; (2) that the supplier is unpaid; (3) that the supplier had a good faith belief that the labor and materials were for the specified work; and (4) that the jurisdictional requirements were met, namely that Sunlee filed the instant complaint within the one year statute of limitations period. *See United States ex rel. Aldridge Electric Co. v. Pickus Construction & Equipment Co.*, 98 C 3261, 2000 U.S. Dist. LEXIS 1511, at *8 (N.D. Ill. Feb. 7, 2000), *remanded by* 249 F.3d 664 (7th Cir. 2001); *United States ex rel. Allied Roofers Supply Corp. v. Blinderman Construction Co.*, No. 86 C 5655, 1986 U.S. Dist. LEXIS 16257, at *4 (N.D. Ill. Dec. 18, 1986). The parties' dispute is limited to the fourth element.

Sunlee argues that its subcontractors provided labor and materials to the Project as late as March 25, 2009,[2] the date Alacran sent Sunlee a notice of contract default letter. *See* Liberty's Exhibit 12, Dkt. 266-2. In contrast, Liberty argues that Sunlee's last day was March 6, 2009, the date Liberty contends that Sunlee abandoned the Project, which eventually led Alacran to terminate Sunlee. Accordingly, the Court must determine whether Sunlee, through its subcontractors, furnished labor or materials through March 17, 2009, one year before it filed suit, or whether it abandoned the Project earlier as asserted by Liberty.

It was Sunlee's burden at the hearing to show that it or its subcontractors[3] performed labor or supplied materials on March 17, 2009 or later. Sunlee claims to have presented "irrefutable evidence establishing that its subcontractors were indeed working and supplying materials or equipment on and after March 17, 2009, making Sunlee's complaint timely as a matter of law." Sunlee's Trial Brief at 2, Dkt. 231. Sunlee asserts that "even if Sunlee was not self-performing work on or after March 17, 2009, the fact that Sunlee's subcontractors/suppliers were working/supplying materials or equipment rentals after March 17, 2009 on the Project satisfies the statute of limitations. Sunlee's Trial Brief at 2, Dkt. 231. Accordingly, Sunlee focuses on the work of its subcontractors.

---

[2] Sunlee no longer relies on the November 16, 2015 affidavit of Ryan Cole or its Third Amended Complaint to claim that Sunlee or its subcontractors and material suppliers provided services and labor to the Project only through March 23, 2009. *See* Nov. 16, 2015 Affidavit of Ryan Cole at 6, Dkt. 168-8; Plaintiff's Third Amended Complaint at 6, Dkt. 97.
[3] Judge Reinhard previously determined that Sunlee could rely on the work of its subcontractors to meet the timeliness requirement. July 18, 2016 Court Order at 7, Dkt. 211.

In advance of the hearing, Sunlee provided an affidavit from Ryan Cole stating that seven subcontractors provided labor and/or materials to the Project through March 25, 2009. Ryan Cole's Affidavit dated Jan. 5, 2016, Dkt. 233-4. Attached to the affidavit were invoices from the seven subcontractors. Exhibits A-H, Dkt. 233-4.[4] Ryan Cole averred that the subcontractor invoices "are all records made and kept in the course of Sunlee's regularly conducted business activity, are records that are routinely made or received and kept in the course of Sunlee's business, in the [sic] Sunlee's usual practice, were made or received at or near the time of the event that they record, and were made or received by a person with knowledge, or from information transmitted by a person with knowledge, and who reported such knowledge in the regular course of business." Ryan Cole's Affidavit dated Jan. 5, 2016, Dkt. 233-4 at 4.

Liberty filed a Motion *in Limine* to bar the majority of Ryan Cole's affidavit and the attached invoices as inadmissible hearsay, objecting based on a lack of foundation, which the Court took under advisement until after development of a factual record during the hearing. Liberty's Motion *in Limine*, Dkt. 263.

At the hearing, Ryan Cole testified that Sunlee received the attached invoices, but that he relied on the subcontractors to provide proper billing and invoicing. Ryan Cole further testified that he called most of the subcontractors sometime in March 2009 when he received the invoices after Alacran's March 25, 2009 notice of default letter. Ryan Cole testified that he typically spoke with the owner of the business or someone in their accounting department, but for these calls was unsure whom he spoke with. He also did not ask the subcontractors how they prepare their invoices or records and did not recall what specific invoices he spoke with the subcontractors about. He testified that subcontractors generally send an invoice within 30 days of service, sometime sooner, but he never testified that he confirmed any of the work or materials on these seven subcontractors' invoices was performed or provided on or after March 17, 2009.

Pursuant to Federal Rule of Evidence 902(11), Ryan Cole's affidavit relating to the attached invoices must meet the requirements set forth in Federal Rule of Evidence 803(6)(A)-(C), "as shown by certification of the custodian or another qualified person" that:

> "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

---

[4] The same affidavit and invoices were submitted as part of the parties' summary judgment briefing.

- 4 -

(C) making the record was a regular practice of that activity."

Federal Rules of Evidence 902(11), 803(6)(A)-(C). "A qualified witness need not be the author of the document but must have personal knowledge of the procedure used to create and maintain the document." *Webb v. Midland Credit Management*, No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006, at *10 (N.D. Ill. May 31, 2012) (quoting *United States v. Reese*, 666 F.3d 1007, 1017 (7th Cir. 2012)).

Ryan Cole's testimony at the hearing makes the Court question whether he had sufficient personal knowledge of how the subcontractor invoices were created and maintained. *See Webb*, No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006, at *12-15 (finding that a party may not merely assert that it incorporated and relied on third-party records in conducting its day-to-day business activities, but rather must satisfy the foundational requirements for admission in Rule 803(6) through a person with personal knowledge of how the third-party record was created). However, the Court finds Ryan Cole's testimony and statements in his affidavit sufficient to admit the invoices under Federal Rules of Evidence 902(11). No other testimony or evidence at the hearing makes the Court doubt the reliability or trustworthiness of the underlying invoices. The Court finds that Liberty's concern about the reliability of Ryan Cole's affidavit goes to the weight the Court may give to the affidavit and invoices, not their admissibility. For purposes of this ruling, the Court has considered the affidavit and invoices in light of the testimony provided at the hearing, and recommends denying Liberty's Motion *in Limine* to bar the evidence. Nevertheless, although the Court has considered these invoices, it still finds that Sunlee has not met its burden to prove that its subcontractors performed work or supplied materials on or after March 17, 2009.

In his affidavit, Ryan Cole states that as general manager of Sunlee he was "familiar with all aspects of the transactions and the work that was performed at the project at Fort McCoy, Wisconsin." Ryan Cole's Affidavit dated Jan. 5, 2016 at 2, Dkt. 233-4. However, at the hearing, Ryan Cole testified that he was never at the Project site to see when a delivery was made or what work was being performed. Noticeably absent is any testimony or other evidence from Sunlee's seven subcontractors themselves about the work they allegedly performed on or after March 17, 2009.

The Court had to consider the subcontractors' invoices in light of other evidence presented at the hearing, namely the testimony of Dai Bui, the owner of Alacran. Dai Bui testified that he was involved in the Project since its inception in 2008 and was familiar with Sunlee's work on the Project. In contrast to Ryan Cole's testimony that he was never at the Project site, Dai Bui testified that he was at the Project site once or twice a month. Dai Bui testified that Sunlee had management, manpower, schedule and performance issues on the Project and eventually abandoned the Project altogether. Dai Bui testified that he received an email from

Ryan Cole sometime during the week of March 14, 2009, stating that Sunlee was not returning to the Project. Although the alleged email was not introduced into evidence, this assertion was never directly challenged by Sunlee. Dai Bui further testified that Alacran's own employees had worked on the Project since its inception, and that on March 16, 2009, Alacran had to mobilize additional workforce[5] to complete work that Sunlee had abandoned.[6] Dai Bui testified that in light of Sunlee's abandonment, he had his project manager send a notice of default letter to Sunlee on March 25, 2009. Liberty's Exhibit 12, Dkt. 266-2. After the three-day cure period provided for in the letter, Sunlee still had not provided a remedy and so as of March 28, 2009, was terminated.

Ryan Cole testified that once he received the subcontractor invoices after receiving Alacran's notice of default letter dated March 25, 2009 (Liberty's Exhibit 12, Dkt. 266-2), he called the subcontractors referenced in his affidavit and confirmed that they were still working at the Project site. He did not testify that he confirmed they were still working for Sunlee, rather than for Alacran as Dai Bui testified. Because Ryan Cole provided little additional information about these invoices, the Court will address each in turn.[7]

Swanson's Commercial Flooring, LLC

Attached to Ryan Cole's affidavit is an invoice from Swanson's Commercial Flooring, LLC ("Swanson's") dated March 19, 2009 for $10,315. Exhibit A, Dkt. 233-4. However, Ryan Cole testified that nothing in Swanson's invoice dated March 19, 2009, referenced services that were rendered or materials that were supplied on or after March 17, 2009. Additionally, Ryan Cole testified that he was uncertain that he even called Swanson's about this specific invoice.

In addition to the invoice, Ryan Cole also attached a letter Swanson's law firm sent to Liberty, asserting that Swanson's performed labor and supplied material to the Project between February and August 2009. Exhibit B, Dkt. 233-4. However, the letter merely states that Swanson's work was performed sometime "between February and the end of August 2009." The letter does not address

---

[5] It was unclear from Dai Bui's testimony whether this workforce included only Alacran employees or former Sunlee employees also.

[6] Liberty also admitted Alacran's certified payroll for the work week of March 9 through March 13, 2009. Liberty's Exhibit 6, Dkt. 266-1. Dai Bui testified that the sixteen employees listed were former employees of Sunlee or Alliance Mechanical (another subcontractor on the Project), who were now working on the Project at Alacran's direction and were getting paid by Alacran. Dai Bui testified that these employees remained on Alacran's payroll for some time and did not go back to work for Sunlee or Alliance Mechanical.

[7] Ryan Cole testified that Sunlee had written subcontractors with all seven subcontractors, but none of these were provided in the record.

whether labor or material was supplied on behalf of Sunlee, or whether it was supplied on or after March 17, 2009.

Ryan Cole's affidavit avers only that Swanson's provided labor and materials through March 25, 2009. Sunlee was terminated on March 28, 2009. Thus, the affidavit does not contradict Dai Bui's testimony that after Sunlee was terminated, Alacran retained some of Sunlee's subcontractors to continue work on the Project. Accordingly, it is unclear when the work was performed and for whom. Without more information, neither the invoice nor the letter provides sufficient evidence to prove that Swanson's provided labor or materials on or after March 17, 2009. *See United States use of Material Service Division of General Dynamics Corp. v. Home Indemnity Co.*, 489 F.2d 1004, 1007 (7th Cir. 1973) (affirming that suit was not brought within one-year period, in part, because "[n]one of the listed invoices in any of the statements bear dates indicating delivery of material covered thereby").

City Wide Insulation of Green Bay

Ryan Cole attached a statement from City Wide Insulation of Green Bay ("City Wide") dated July 2, 2009 to aver that it provided materials and labor from January 21 through March 19, 2009. Ryan Cole's Affidavit dated Jan. 5, 2016, Dkt. 233-4 at 3; Exhibit C, Dkt. 233-4. However, the statement from City Wide merely lists transaction dates from January 21 through March 19, 2009 with corresponding invoice numbers. Sunlee provided no other evidence to support that the transaction dates relate to the date labor was provided or materials were delivered. Therefore, the Court finds this statement insufficient to prove that City Wide provided labor or materials on or after March 17, 2009.

Badgerland Supply, Inc.

Ryan Cole attached an invoice from Badgerland Supply, Inc. ("Badgerland") dated March 19, 2009. Exhibit D, Dkt. 233-4. The invoice includes a ship date of March 15, 2009, along with a list of several specific items. Although Ryan Cole's affidavit states that this invoice shows that materials were provided on March 19, 2009, at the hearing Ryan Cole testified that he could not tell from the invoice the date on which materials may have been delivered to the Project site. Therefore, the Court finds this invoice insufficient to prove that Badgerland provided materials on or after March 17, 2009.

Jack Hall Construction Inc.

Ryan Cole attached an invoice from Jack Hall Construction Inc. ("Jack Hall") dated May 6, 2009, as evidence that Jack Hall provided labor and materials as late as March 31, 2009. Ryan Cole's Affidavit dated Jan.5, 2016 at 3, Dkt. 233-4; Exhibit E, Dkt. 233-4. The description on the invoice is dated March 31, 2009 and

states: "Supplied labor and material to do concrete work." *Id.* At the hearing, Ryan Cole testified that although Sunlee had already been terminated by March 31, 2009, Jack Hall performed concrete work over the course of several weeks and March 31, 2009, was the completion date. However, when questioned about the language of the invoice, Ryan Cole admitted that it did not state that work was completed on March 31, 2009. Without additional information on when and whether the other work was actually performed for Sunlee, the Court finds this invoice standing alone is insufficient to prove that Jack Hall provided labor or materials for Sunlee on or after March 17, 2009.[8]

Mobile Mini, Inc.

Ryan Cole attached two invoices from Mobile Mini, Inc. ("Mobile Mini"). Exhibit F, Dkt. 233-4. The first invoice is dated March 12, 2009, for a storage container located at the Project site for the rental period from March 16 to April 12, 2009. *Id.* The second is dated April 9, 2009, for a storage container located at the Project site for the rental period from April 13 to May 10, 2009. *Id.* At the hearing, Ryan Cole testified that Mobile Mini provided a mobile office, porta-potties, and a storage container to the Project site. He testified that the two attached invoices were for the storage container.

In general, equipment rental costs are covered by the Miller Act. *United States use of Time Savers, Inc. v. J.D.L. Construction, Inc.*, No. 89 C 8589, 1990 U.S. Dist. LEXIS 2189, at 1-2* (N.D. Ill. Feb. 20, 1990) (citing *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376 (1917)). For the supplier of rental equipment, the Miller Act limitations period begins to run when the "equipment is no longer available for use by the subcontractor on the project." *United States use of Pippin v. J.R. Youngdale Constr. Co., Inc.*, 923 F.2d 146, 149-50 (9th Cir. 1990). "The equipment is no longer available for the subcontractor's use on the particular project when the subcontractor's relationship with the project is ended by the subcontractor abandoning the project or by the prime contractor terminating its contract with the subcontractor." *Id.* at 150.

It is undisputed that Sunlee was terminated as of March 28, 2009. Accordingly, any lease for equipment beyond that date would not assist Sunlee in

---

[8] Alternatively, the parties' contracts for the Project also seem to prevent Sunlee from recovering for work performed post-termination. *See United States v. Millers Mutual Fire Insurance Co.*, 942 F.2d 946, 953 (5th Cir. 1991) (finding that the language of contract supported a finding that subcontractor could not recover for the cost of labor and materials provided after termination); *see also* Exhibit 1 at 19 and 40, Dkt. 233-1 (stating that if Sunlee defaults, Alacran "may terminate the Agreement and take possession of the site and of all materials, equipment, tools and construction equipment and machinery thereon owned by [Sunlee] and may finish the Work by whatever method [Alacran] may deem expedient").

proving that its claim was timely filed. *See Pippin*, 923 F.2d at 150 (finding that equipment is no longer available for use once the subcontractor is terminated).

As to the lease period from March 16 to April 12, 2009, Dai Bui testified that Sunlee abandoned the Project on or before March 16, 2009. Sunlee did not provide any objective evidence contradicting Dai Bui's testimony to show that it was still involved in the Project after March 16, 2009. *Compare United States use of SGB Universal Builders Supply, Inc. v. Fidelity & Deposit Co.*, 475 F. Supp. 672, 674-75 (E.D.N.Y. 1979) (finding that a lessor was unable to recover rental payments for the six months the equipment was left on site and accruing unnecessary rental costs after subcontractor left the project because a "lessor can hardly be said to be 'furnishing or supplying' the equipment to a subcontractor who has deserted the project and has ceased to use the equipment.") *with United States ex rel Carlisle Construction Co. v. Coastal Structures, Inc.*, 689 F. Supp. 1092, 1100 (M.D. Fla. 1988) (allowing lessor to recover six months of lease payments after contractor was terminated because lessor mitigated its damages by leaving the crane on site and not incurring a $20,000 to $30,000 return fee by instead leased it to the new contractor). Dai Bui further testified that after March 9, 2009, but before Alacran mobilized additional workforce on March 16, 2009, Alacran did use some of the plumbing materials that were being stored inside of the rental containers. However, once Alacran mobilized its workforce on March 16, 2009, none of the rental equipment was being used by Alacran. *Cf. United States Department of the Navy ex rel. Andrews v. Delta Contractors Corp.*, 893 F. Supp. 125, 130 (D.P.R. 1995) (allowing recovery for lease payments after subcontractor was terminated, in part, because the general contractor continued to use the equipment for the project). Although Dai Bui was unsure of the exact date that Sunlee stopped using the storage containers, it is Sunlee's burden to prove that they were on the Project site such that the equipment is "available for use." *See Pippin*, 923 F.2d at 149-50.

At the hearing, Ryan Cole testified that other than calling the subcontractors after receiving their invoices to confirm that they were still on the Project in March 2009, he was not at the job site to confirm that the storage container was being used on March 17, 2009 or later, rather than just sitting on the Project site with a recurring rental contract. Additionally, there was no evidence presented that Mobile Mini believed in good faith that the storage containers were supplied for the Project, or of when it determined that Sunlee had abandoned the Project so as to remove its rentals from the Project site. *See United States use of Sunbelt Pipe Corp. v. United States Fidelity & Guaranty Co.*, 785 F.2d 468, 470 (4th Cir. 1986) ("If the supplier reasonably believes, in good faith, that the material furnished is to be used in the bonded project, he has the protection of the bond."); *see also Frank Briscoe Co. v. United States*, 396 F.2d 847, 848 (10th Cir. 1968) (imposing a duty upon the lessor to keep himself informed about the subcontractor's activities on the job site). All we have here are two rental invoices. Therefore, the Court finds the

invoices and Ryan Cole's testimony insufficient to prove that Mobile Mini provided materials, as interpreted under the Miller Act, on or after March 17, 2009.

United Rentals

Ryan Cole attached four invoices from United Rentals. Exhibit G, Dkt. 233-4. Two of the invoices are for the rental of two boom lifts for the Project site. Exhibit G at 21, 24, Dkt. 233-4. The invoices indicate that the booms were rented from December 30, 2008 until March 31, 2009. *Id.* The remaining two invoices are for the rental of two heaters. Exhibit G at 22-23, Dkt. 233-4. The invoices indicate that the heaters were rented from January 14, 2009 until March 31, 2009. *Id.*

The invoices do no indicate the date that the booms or heaters were in use, only the period that they were rented. At the hearing, Ryan Cole testified that he had no personal knowledge of whether the boom or heaters were used on or after March 17, 2009. Ryan Cole did testify that one of the invoices for the boom listed fuel charges with a billing date of March 24 through March 31, 2009. *See* Exhibit G at 24, Dkt. 233-4. The Court has reviewed this invoice and finds that it does not support Ryan Cole's position that the boom was used on or after March 17, 2009. First, the invoice does not indicate the dates the fuel was used; only the billing date for the invoice generally. Second, the fuel charge appears to have been assessed on the date of the equipment's return rather than on the date the fuel was used. *Compare* Exhibit G at 22, Dkt. 233-4 (4 Week Billing Invoice for booms with no fuel charges) *with* Exhibit G at 24, Dkt. 233-4 (Rental Return Invoice with fuel charges and damage assessment for booms once returned to rental company).

Dai Bui testified that he was familiar with several of Sunlee's subcontractors that leased equipment to the Project and confirmed that the rental equipment was on the Project site. In particular, equipment from United Rentals was still on site after Sunlee was terminated on March 28, 2009. However, Dai Bui testified that once Alacran mobilized its workforce on March 16, 2009, its workers never used the equipment Sunlee had rented. Alacran did not need to use Sunlee's rental equipment because Alacran had its own.

The Court agrees with Sunlee that the rental equipment need not be in continual use. *See United States ex rel Mississippi Road Supply Co. v. H. R. Morgan, Inc.*, 542 F.2d 262, 269 (5th Cir. 1976). Nevertheless, there must be some objective evidence that it was used on March 17, 2009, or later. Without more about these rentals, the Court finds these invoices insufficient to contradict Dai Bui's testimony that neither Sunlee nor Alacran used the rental equipment after March 16, 2009. *See Pippin*, 923 F.2d at 150 (finding that equipment is no longer available for use once the subcontractor abandoned the project or is terminated).

Williams Scotsman, Inc.

Ryan Cole attached an invoice from Williams Scotsman, Inc. ("Williams Scotsman") dated June 1, 2009, for rental of a mobile office that month. Exhibit H, Dkt. 233-4. The invoice also references two open invoices with due dates of April 1, 2009 and May 1, 2009 and the amount still owed. *Id.* Ryan Cole's affidavit states that Williams Scotsman provided materials for the Project on or after March 17, 2009, claiming this invoice is for "materials provided for the Fort McCoy Project from [sic] through April 1, 2009 (and thereafter)." Ryan Cole's Affidavit dated Jan. 5, 2016 at 4, Dkt. 233-4.

At the hearing, Ryan Cole testified that this was not one of the invoices that he questioned the subcontractor about in March 2009. He also conceded during the hearing that although his affidavit relies on the invoice as evidence that Williams Scotsman provided materials to the Project through April 1, 2009, nothing on the invoice actually supports that, and that nothing on the invoice identifies when equipment was used or by whom. Accordingly, the Court finds this invoice insufficient to prove that Williams Scotsman provided materials on or after March 17, 2009.

\* \* \*

None of the seven subcontractors addressed above submitted any affidavits or provided any testimony stating that they supplied labor or materials to the Project through March 17, 2009, let alone March 25, 2009. At the hearing, Ryan Cole testified that he was familiar with everything on the Project, but his answers to additional questions revealed that he had little to support the exact date these subcontractors last worked on or supplied materials to the Project. All the Court has before it are invoices and Ryan Cole's general statement that each of these subcontractors "provided labor and materials for the Project through March 25, 2009." Ryan Cole's Affidavit dated Jan. 5, 2016 at 2-4, Dkt. 233-4. The invoices themselves provide no indication of when the work took place or when materials were delivered. Moreover, merely leaving rental equipment on the job site on or after March 17, 2009, without more, is not enough to show that Sunlee was providing labor and materials as interpreted under the Miller Act.

Other than the subcontractors' invoices, the only additional evidence that Sunlee submitted was portions of the deposition testimony of Fort McCoy employee Mary Purpus to authenticate numerous government contract progress reports and contract inspection forms for the Project. *See* Exhibit 5, Dkt. 233-5. Sunlee relies on two forms in particular, Contract Progress Report No. 22 relating to the period of March 16 to March 20, 2009 (Exhibit 4 at 18, Dkt. 233-5), and Contract Inspection Forms relating to the period of March 16 to March 22, 2009 (Exhibit 6 at 95-96, Dkt. 233-5), to assert that work was performed on or after March 17, 2009. Sunlee's

- 11 -

Trial Brief at 3, Dkt. 231. In particular, Sunlee claims that the Contract Progress Report No. 22 references a concrete pad and metal stairs, HVAC and drywall work being done during the period of March 16 to March 20, 2009 because the report indicates that 1% was completed during this time period. Exhibit 4 at 18, Dkt. 233-5. Other than citing the report itself, no other information or explanation was provided. Accordingly, the Court is left with little evidence to determine whether the 1% of work that was completed during this the time period occurred on March 16 2009, as opposed to March 17, 2009 or later. *See* Exhibit 4 at 18, Dkt. 233-5.

Dai Bui's testimony about Contract Progress Report No. 22, provided no additional insight. Dai Bui testified that Jack Hall, one of Sunlee's subcontractors at the time, was doing the concrete work for the Project, but was not completing the metal stair work. Dai Bui was unsure who was completing the HVAC work, but Gallardo, a subcontractor of Sunlee at the time, was completing the drywall. Dai Bui testified that the individuals performing this work could have been considered Alacran employees at the time the work was performed, but he could not tell from the report alone. Nevertheless, Dai Bui confirmed that the report did not identify what specific dates the work was performed. Similarly, the Court cannot determine this either.

Sunlee further asserts that the Contract Inspection Form for Building 654 indicates workers were performing HVAC, electrical, flooring and sewer/water work for the period of March 16 to March 20, 2009. Exhibit 6 at 95, Dkt. 233-5. According to the Contract Inspection Form, it identified HVAC subcontractors working on March 18, 2009, electrical subcontractors working on March 19, 2009, flooring subcontractors working on March 18, 2009, and sewer/water subcontractors working from March 17 through March 20, 2009. Exhibit 6 at 95, Dkt. 233-5.

Sunlee questioned Dai Bui about the government's Contract Inspection Form, but Dai Bui testified that he had never seen the form before. However, Dai Bui testified that Swanson's was performing the flooring work for the Project, but he was unsure if Swanson's was on the Project on March 18, 2009. Moreover, in the work element section of the Contract Inspection Form, it only shows 2% complete for HVAC. Exhibit 6 at 95, Dkt. 233-5. None of the other sections for work, including electrical, flooring or plumbing show a percentage completed during the time period. *Id.* By contrast, the Contract Inspection Form for Building 2779, during the same time period, shows 2% complete for concrete pad/metal stairs and drywall during this time period, but does not identify any who performed the work. Exhibit 6 at 96, Dkt. 233-5. Even if the Court were to determine that one or both of these forms shows that work was being done during the dates specified, Sunlee has failed to provide any evidence on who was performing the alleged work on March 17, 2009 or after, whether it was Sunlee, a subcontractor hired by Sunlee, or someone working for Alacran. The forms merely state that Alacran was the

contractor. Without more, it is unclear whether work was being performed for Sunlee on or after March 17, 2009.

Sunlee was required to show that it or one of its subcontractors provided labor or materials to the Project on March 17, 2009, or later. The Court finds that Sunlee has not met its burden because it failed to provide specific evidence as to when work was performed and/or by whom. Accordingly, it is this Court's Report and Recommendation that Sunlee's Miller Act claim (Count I) be barred by the one-year limitations period. Any objection to this Report and Recommendation must be filed by March 27, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Dated: March 13, 2018      By: _____
                              Iain D. Johnston
                              United States Magistrate Judge